UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JUDITH TAGGART-ERKANDER,

    Plaintiff,

    v.                                                            Case No. 19-CV-435

RACINE UNIFIED SCHOOL DISTRICT,

    Defendant.

DECISION AND ORDER ON DEFENDANT'S
MOTION FOR JUDGMENT ON THE PLEADINGS

    Judith Taggart-Erkander, a former special education teacher for Wadewitz Elementary School in Racine, Wisconsin ("Wadewitz"), sues the Racine Unified School District ("RUSD") for violations of her due process and equal protection rights stemming from Taggart-Erkander's alleged coerced resignation from employment. The defendant moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) as to Taggart-Erkander's "class-of-one" equal protection claim. For the reasons that follow, the defendant's motion is granted.

BACKGROUND

    Taggart-Erkander alleges that in 2017 she was a tenured special education teacher with the RUSD working at Wadewitz. (Second Am. Compl. ¶¶ 2, 26, Docket # 29.) She alleges that she was "well past" her fourth contract with the RUSD and had worked at Wadewitz for approximately ten years. (*Id.* ¶ 26.) On May 10, 2017, one of Taggart-Erkander's special education aides, Dana Rodriguez, brought a stun gun and large folding knife into the special education classroom at Wadewitz. (*Id.* ¶ 44.) Taggart-Erkander alleges

that she had no knowledge of the weapons incident until the evening of May 10, 2017, when a special education assistant named Diane Hinze texted her with the information. (*Id.* ¶¶ 45–46.) Taggart-Erkander further alleges that the RUSD did not have a policy on contacting a superior "after hours" and that she did not have Principal Chad Chapin's personal email or phone number. (*Id.* ¶¶ 47–48.) Thus, Taggart-Erkander informed Principal Chapin of the weapons incident on the morning of May 11, 2017, before school opened for classes or Rodriguez arrived at Wadewitz. (*Id.* ¶ 51.) Taggart-Erkander alleges that although she notified Principal Chapin of the weapons incident at 7:45 a.m. on May 11, 2017, he allowed Rodriguez to enter the school and did not call the Racine Police Department until ninety minutes later. (*Id.* ¶ 55.)

Taggart-Erkander alleges that a meeting was held about the incident on May 16, 2017. (*Id.* ¶ 70.) She alleges that she was given a letter on May 22, 2017 that presented a factually incorrect version of events, specifically, it stated that by failing to immediately report the weapons incident to Principal Chapin, she allowed Rodriguez to return to the school the next day, which put her students in danger. (*Id.* ¶¶ 70–71.) Taggart-Erkander was informed that effective May 22, 2017, she was suspended without pay and would be reassigned to a different teaching assignment and location for the 2017–2018 school year. (*Id.* ¶ 70.) Taggart-Erkander wrote two rebuttal letters disputing the school's version of the weapons incident. (*Id.* ¶ 78.) Taggart-Erkander signed a limited agreement to retire from the RUSD and preserve her pension but did not waive her right to sue. (*Id.* ¶ 115.)

**STANDARD OF REVIEW**

A motion for judgment on the pleadings under Rule 12(c) is granted "only if 'it appears beyond doubt that the plaintiff cannot prove any facts that would support [her]

claim for relief.'" *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998) (internal citations omitted). The moving party should be "clearly entitled to judgment." *Edmonds v. United States*, 148 F. Supp. 185, 186 (E.D. Wis. 1957). In order to succeed, "the moving party must demonstrate that there are no material issues of fact to be resolved." *Northern Indiana Gun & Outdoor Shows, Inc.*, 163 F.3d at 452. Further, the complaint must be construed in the manner most favorable to the nonmoving party. *Id.* (citing *GATX Leasing Corp. v. National Union Fire Ins. Co.*, 64 F.3d 1112, 1114 (7th Cir. 1995)). A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is decided in the same manner as a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *Id.* In determining if the complaint is sufficient, the court looks only to the pleadings, which include "the complaint, the answer, and any written instruments attached as exhibits." *Id.* (internal citations omitted).

**ANALYSIS**

In Count Two of her second amended complaint, Taggart-Erkander alleges a "class-of-one" equal protection violation under the Fourteenth Amendment stemming from her termination of employment. (Second Am. Compl., Count Two.) The Equal Protection Clause of the Fourteenth Amendment provides that "no State shall . . . deny to any persons within its jurisdiction the equal protection of laws." U.S. Const. amend. XIV, § 1. Traditionally, the Equal Protection Clause is understood as protecting members of vulnerable groups from unequal treatment attributable to the state. *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 941 (7th Cir. 2010). However, it also proscribes state action that irrationally singles out and targets an individual for discriminatory treatment as a so-called "class-of-one." *Id.* To show a class-of-one equal protection claim, a plaintiff must

allege that she "'has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Id.* (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

Importantly, however, the Supreme Court has held that "the class-of-one theory of equal protection has no application in the public employment context." *Engquist v. Ore. Dep't of Agric.*, 553 U.S. 591, 604–05 (2008). The Seventh Circuit has reiterated *Engquist*'s holding:

> [B]ecause the government traditionally is given even more discretion in its role as employer than in its role as enforcer of the law, public employees simply do not have recourse to class-of-one claims if they are singled out for firing. *Engquist*, 553 U.S. at 607, 128 S.Ct. 2146 ("we are guided, as in the past, by the 'common-sense realization that government offices could not function if every employment decision became a constitutional matter'"). To bring an equal protection claim, public employees aggrieved by their firing must be able to allege and later prove discrimination against a protected class. Under *Engquist*, the prohibition on class-of-one claims in the public employment context is categorical.

*Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012). Despite this language, Taggart-Erkander, a public employee, argues that *Engquist* makes a distinction between at-will employees and contract employees. (Pl.'s Resp. Br. at 10–16, Docket # 33.) I disagree. Taggart-Erkander cherry-picks certain language from *Engquist* to reach her conclusion that the "*Engguist* [sic] Court seems to except certain litigants from the categorical bar on 'class-of-one' allowing claims where a state employee can show 'some sort of statutory or contractual standard that modifies the traditional common law rule.'" (Pl.'s Resp. Br. at 12.) But the *Engquist* court makes no such distinction between at-will and contract employees. The language Taggart-Erkander quotes comes from the Court's recitation of the history of government employment, which was traditionally at-will. 553 U.S. at 606. The Court did state that "recognition of a class-of-one theory of equal protection in the public employment context—that is, a claim that the State treated an employee differently from others for a bad

4

reason, or for no reason at all—is simply contrary to the concept of at-will employment." *Id.* In other words, the Supreme Court did note that the "class-of-one" equal protection theory is contrary to the concept of employment at-will.

However, the Court did not stop there. It went on to state that "Congress and all the States have, for the most part, replaced at-will employment with various statutory schemes protecting public employees from discharge for impermissible reasons . . . . But a government's decision to limit the ability of public employers to fire at will is an act of legislative grace, not constitutional mandate." *Id.* at 606–07. The *Engquist* Court concluded that disallowing the "class-of-one" theory of equal protection in the public employment context recognizes that "government offices could not function if every employment decision became a constitutional matter." *Id.* at 607 (internal quotation and citation omitted). The Court stated: "Public employees typically have a variety of protections from just the sort of personnel actions about which Engquist complains, but the Equal Protection Clause is not one of them." *Id.* at 609. Thus, the *Engquist* Court did not, as Taggart-Erkander suggests, limit its holding to public employees who were employed at-will. Rather, the rationale that "government offices could not function if every employment decision became a constitutional matter" applies to *all* public employees, whether employed at-will, employed by a contract, or protected by statute. But as the Court noted, this does not leave public employees without remedy. For example, a public employee under contract could bring a breach of contract action.

Taggart-Erkander cites no cases in support of her interpretation of *Engquist*. In fact, other courts in this circuit have specifically found "class-of-one" equal protection claims barred by *Engquist* even when the parties had an employment contract. *See, e.g.*, *Clark v.*

5

*Milwaukee Cty.*, No. 18-CV-503, 2018 WL 6504371 (E.D. Wis. Dec. 11, 2018); *Reiff v. Calumet City*, No. 10 C 5486, 2014 WL 4460457 (N.D. Ill. Sept. 10, 2014); *Burge v. Rogers*, No. 13 C 6399, 2014 WL 2118739 (N.D. Ill. May 21, 2014); *McCraven v. Illinois*, No. 12-CV-4451, 2013 WL 1286669 (N.D. Ill. Mar. 27, 2013). The Seventh Circuit makes clear that *Engquist* holds that "'disputes related to a public employee's interactions with superiors or co-workers *never* may be litigated as class-of-one claims under the equal protection clause.'" *Forgue v. City of Chicago*, 873 F.3d 962, 969 (7th Cir. 2017) (quoting *Avila v. Pappas*, 591 F.3d 552, 554 (7th Cir. 2010)) (emphasis in original). Thus, Taggart-Erkander's "class-of-one" equal protection claim fails.

Finally, Taggart-Erkander attempts to salvage her equal protection claim by arguing that, as a woman, she is a member of a protected class and urges me to analyze her equal protection claim "through the Title VII lens." (Pl.'s Resp. Br. at 23–25.) But a "class-of-one" claim is specifically utilized when a plaintiff is *not* alleging membership in a class or group. *See Olech*, 528 U.S. at 564. And Taggart-Erkander has not raised a Title VII claim in her second amended complaint, nor has she asserted that she properly filed an administrative charge against the RUSD for discrimination based on sex.

For these reasons, Taggart-Erkander's "class-of-one" equal protection claim is barred as a matter of law and must be dismissed. The defendant's motion for judgment on the pleadings as to Count Two of the Second Amended Complaint will be granted. Count Two will be dismissed.

**ORDER**

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendant's motion for judgment on pleadings (Docket # 31) is **GRANTED**. Count Two of the Second Amended Complaint is dismissed.

Dated at Milwaukee, Wisconsin this 2nd day of December, 2019.

BY THE COURT

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge