# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**JUDITH TAGGART-ERKANDER,**

    Plaintiff,

  v.                                                       Case No. 19-CV-435

**RACINE UNIFIED SCHOOL DISTRICT,**

    Defendant.

---

## DECISION AND ORDER ON DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

---

Judith Taggart-Erkander, a former special education teacher for Wadewitz Elementary School in Racine, Wisconsin ("Wadewitz"), sues the Racine Unified School District ("RUSD" or "the district") for violation of her procedural due process rights stemming from Taggart-Erkander's alleged coerced resignation from employment. The RUSD moves for summary judgment on Taggart-Erkander's due process claim. For the reasons that follow, the RUSD's motion is granted and this case is dismissed.

## UNDISPUTED FACTS

In 2017, Taggart-Erkander was a tenured special education teacher with the RUSD working at Wadewitz. (Plaintiff's Proposed Findings of Fact ("PPFOF") ¶ 1, Docket # 44 and Def.'s Resp. to PPFOF ("Def.'s Resp." ¶ 1, Docket # 48.) On May 10, 2017, one of Taggart-Erkander's special education aides, Dana Rodriguez, brought a stun gun and large folding knife into the special education classroom at Wadewitz. (Def.'s Proposed Findings of Fact ("DPFOF") ¶¶ 22–24, 42, Docket # 39 and Pl.'s Resp. to DPFOF ("Pl.'s Resp.") ¶¶ 22–24, 42, Docket # 44.) Taggart-Erkander learned of the weapons incident around 7:14

p.m. on May 10, 2017 when she received a text message from her colleague Marguerite McDonald asking, "Hey, do you know Dana brings her taser gun to school?" (*Id.* ¶ 22.) Taggart-Erkander informed Principal Chad Chapin of the weapons incident the next morning, at approximately 7:45 a.m. on May 11, 2017. (*Id.* ¶¶ 33–36 and PPFOF ¶¶ 6–8.) After reporting the incident, Taggart-Erkander did not hear anything else from Principal Chapin until around 9:00 a.m. when Principal Chapin entered her classroom and whispered to Rodriguez to come with him. (DPFOF ¶ 41 and Pl.'s Resp. ¶ 41.) Approximately fifteen minutes later, Principal Chapin returned to Taggart-Erkander's classroom to retrieve Rodriguez's backpack. (*Id.*) Taggart-Erkander was informed by Principal Chapin later that day that a taser and a large knife were found in Rodriguez's backpack. (*Id.* ¶ 42.)

The RUSD investigated the series of events that led to the discovery of weapons in Rodriguez's backpack, including interviewing Taggart-Erkander and each individual present in Taggart-Erkander's classroom on May 10, 2017. (*Id.* ¶ 44.) Taggart-Erkander received a hand-delivered notice of her interview scheduled for May 16, 2017. (*Id.* ¶ 45.) The purpose of the meeting was to get Taggart-Erkander's side of the story regarding the weapons incident. (*Id.*) The May 16, 2017 meeting began with the RUSD's Chief of Human Resources, Julie Landry, asking Taggart-Erkander to tell her what had happened on May 10 and May 11, 2017. (*Id.* ¶ 47, Declaration of Julie Landry, ¶ 2, Docket # 40.) Taggart-Erkander provided her side of the story, unrestricted by the RUSD. (DPFOF ¶ 47 and Pl.'s Resp. ¶ 47.)

On May 24, 2017, a second meeting was held between the RUSD and Taggart-Erkander. (*Id.* ¶ 49.) During this meeting, Taggart-Erkander was given a letter and verbally informed that she would be disciplined for her role in the weapons incident. (*Id.*) Taggart-

Erkander was informed that she was being disciplined for failing to immediately inform Principal Chapin about the weapons incident despite having his email address on May 10, 2017. (*Id.* ¶ 50.) Taggart-Erkander was given another opportunity to speak directly to the RUSD on her own behalf. (*Id.* ¶ 49.) The letter stated that Taggart-Erkander would be disciplined by issuing her a 10-day unpaid suspension and assigning her to a different school for the following school year. (*Id.* ¶ 51 and PPFOF 9–14.) Taggart-Erkander's 10-day suspension, however, was revoked before it went into effect. (DPFOF ¶ 51 and Pl.'s Resp. ¶ 51.) Taggart-Erkander wrote letters to the RUSD dated May 24, 2017 and May 25, 2017 expressing her disagreement with the district's decision to discipline her. (*Id.* ¶¶ 57, 60.)

On May 25, 2017, Taggart-Erkander's colleague, Diane Hinze, posted a message on Facebook stating, "To all my friends at Wadewitz we all need your support, this is so wrong," to which Taggart-Erkander responded, "You have so much support. Let everyone know. This needs to hit the media." (PPFOF ¶ 14.) The Facebook posts were reported to Landry; however, Taggart-Erkander was not disciplined. (*Id.*) On May 30, 2017, Taggart-Erkander and her union representative, Michael Burke, filed a grievance with the RUSD challenging the district's decision to assign her to a different school for the 2017-2018 school year. (DPFOF ¶ 72 and Pl's Resp. ¶ 72.) In connection with her grievance, the union provided Taggart-Erkander with an attorney. (*Id.* ¶ 73.)

On June 1, 2017, the *Racine Journal Times* published a story about the nature and circumstances of the weapons incident, stating: "The reasons for the discipline have not been made public. However, several sources have said the one-day delay in informing the administration is likely the reason behind the discipline of the staff members in the classroom." (PPFOF ¶ 15.)

Following the weapons incident, the RUSD became aware that a parent in Taggart-Erkander's classroom was using the classroom's exterior side door to bring their child into the classroom, in violation of the school's policy. (*Id.* ¶ 64.) Taggart-Erkander was hand-delivered a letter on June 9, 2017 regarding this issue and setting a meeting for June 12, 2017. (*Id.* ¶ 65.) A meeting attended by Taggart-Erkander, Taggart-Erkander's husband, Landry, and Human Resources Manager, Lynda Meleski, was held on June 12, 2017. (*Id.* ¶ 67.) At this meeting, Taggart-Erkander was given the opportunity to tell her side of the story regarding allowing the parent to bring the child into her classroom through the side door. (*Id.* ¶ 68.) At the conclusion of the meeting, Landry stated that she would investigate the issue further with Principal Chapin; but Taggart-Erkander did not receive any discipline as a result of the June 12 meeting. (*Id.* ¶ 69.)

During the June 12 meeting, Taggart-Erkander's husband stated that he felt as if his wife was being forced to retire, to which Landry stated that they "do not force people into retirement." (*Id.* ¶ 70.) Taggart-Erkander raised the possibility of retiring from the RUSD to resolve her grievance with the district. (Declaration of Tony McGrath ¶ 2, Ex. A, Deposition of Judith Taggart-Erkander ("Taggart-Erkander Dep.") at 131, Docket # 41-1.) Taggart-Erkander testified that she made the decision to retire from the district because she "didn't want to go to another school and start all over again" when she only had one year left before retirement. (*Id.* at 126.) Taggart-Erkander and the district agreed on the terms of her retirement and grievance resolution on July 28, 2017. (DPFOF ¶ 76.) Taggart-Erkander's union appointed counsel sent a letter to the RUSD's outside counsel memorializing the terms of the settlement. (*Id.*) As part of the settlement, the district agreed

4

to rescind the discipline issued to Taggart-Erkander and remove any reference to the discipline from her personnel file. (*Id.*)

Taggart-Erkander testified that when she entered into the settlement agreement with the RUSD, she still had a renewed contract in place for the 2017-2018 school year and a promise from the district that she had a job at a different school within the district. (Taggart-Erkander Dep. at 129.) The RUSD received Taggart-Erkander's letter notifying the district of her retirement and the district accepted her retirement effective August 1, 2017. (DPFOF ¶ 78.)

## LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 56(a), a party can seek summary judgment upon all or any part of a claim or defense asserted. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which

would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Services, Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (quoting *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Taggart-Erkander alleges that she was constructively discharged from her employment without procedural due process of law. (Second Am. Compl., Docket # 29.) "To demonstrate a procedural due process violation of a property right, the plaintiff must establish that there is (1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process. Accordingly, a plaintiff asserting a procedural due process claim must have a protected property interest in that which [she] claims to have been denied without due process." *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010) (internal quotations omitted).

The RUSD previously moved to dismiss this cause of action for failure to state a claim, and I granted the district's motion. (Docket # 28.) I found that while Taggart-Erkander argued she was constructively discharged from her employment; she alleged no facts that the district made her employment so unbearable that she resigned. Thus, what she was truly pursuing was a theory of coerced resignation. (*Id.* at 10.) Coerced resignation is characterized by "the presence of a Hobson's choice in which the employee must

6

resign or suffer severe consequences, such as facing criminal charges." *Palka v. Shelton*, 623 F.3d 447, 453 (7th Cir. 2010). Taggart-Erkander alleged that her "Hobson's Choice" was to retire or be terminated, alleging that the offer to transfer her to another school was withdrawn at the June 12 meeting. (Docket # 28 at 13.) I explained that an employee's decision to retire instead of facing adverse employment consequences, including termination, does not make the decision involuntary. *Welter v. City of Elgin*, No. 12-CV-6837, 2013 WL 1337347, at *4 (N.D. Ill. Mar. 29, 2013). (Docket # 28 at 12.) Rather, the "severe consequences" creating a "Hobson's Choice" are more akin to threats of physical violence or criminal charges. *See, e.g.*, *Rao v. Gondi*, No. 14 C 66, 2015 WL 9489908, at *3 (N.D. Ill. Dec. 30, 2015) (finding complaint stated a claim for coerced resignation when plaintiff pled that he was faced with the choice of resigning or public shaming for plagiarism and a federal investigation or federal charges); *Lynd v. Bristol Kendall Fire Prot. Dist.*, No. 11 C 7014, 2012 WL 3069391, at *4 (N.D. Ill. July 26, 2012) (finding complaint sufficiently stated a claim for coerced resignation when plaintiff alleged the defendants threatened him and his family if he did not sign the resignation letters). Thus, on the facts alleged in her amended complaint, I found that Taggart-Erkander failed to allege coerced resignation, thus she had no deprivation of property and so no right to a hearing. *See Patterson v. Portch*, 853 F.2d 1399, 1406 (7th Cir. 1988). Taggart-Erkander was given an opportunity to file a second amended complaint, which she did. However, in her second amended complaint, Taggart-Erkander continued to allege that her "Hobson's Choice" involved retirement or termination, alleging that she understood at the June 12, 2017 meeting that she was being terminated. (Second Am. Compl. ¶¶ 102, 117, 138, 152.)

In other words, Taggart-Erkander's second amended complaint continued to insufficiently allege a procedural due process violation. The parties completed discovery, however, which revealed that Taggart-Erkander was not, in fact, terminated at the June 12 meeting and that she understood that she had a job offer in place in late July. (Taggart-Erkander Dep. at 129.) Termination is insufficient to allege a procedural due process violation; thus, a transfer to a different school certainly does not create a "Hobson's Choice." *See Lewandowski v. Two Rivers Pub. Sch. Dist.*, 711 F. Supp. 1486, 1495 (E.D. Wis. 1989) ("[M]ere transfers and reassignments have generally not been held to constitute a constructive discharge or to implicate a constitutionally protected property interest.").

Taggart-Erkander attempts to shed doubt on the district's intentions to transfer her by arguing that she did not have her new school assignment in place by July 15; speculating that perhaps the RUSD was not going to follow through on the transfer. (Pl.'s Resp. Br. at 18.) But again, this speculation concerns whether Taggart-Erkander was terminated from her employment, which is insufficient to show a due process violation. And her speculation does not change the undisputed evidence that she was under contract with the district for the 2017-2018 school year and that she understood that she had a job waiting for her with the district at the time she entered into her July settlement agreement. (Taggart-Erkander Dep. at 129.) The only scenario Taggart-Erkander faced was to retire or move to a new school—an insufficient choice to show deprivation of a protected property interest.

I also previously found that while Taggart-Erkander alleged a deprivation of due process, the facts contained in her complaint and its attached exhibits undermined her claim. (Docket # 28 at 15.) Pre-termination, a civil servant removable only for cause is entitled to the following procedure: (1) oral or written notice of the charges, (2) an

explanation of the employer's evidence, and (3) an opportunity to tell her side of the story. *Staples v. City of Milwaukee*, 142 F.3d 383, 385 (7th Cir. 1998). Now, Taggart-Erkander asserts that she was "extended hearings and the right to be heard and even penned two rebuttal letters." (Pl.'s Resp. Br. at 17.) Thus, even if Taggart-Erkander had a protected property interest in her employment that she was deprived of, she acknowledges that she received due process. Thus, Taggart-Erkander's due process claim unequivocally fails.

As a final note, the RUSD offers in a footnote that I should consider an award of attorneys' fees in favor of the district given Taggart-Erkander's plainly meritless arguments. (Def.'s Reply Br. at 6 n.4, Docket # 46.) As the parties have not had an opportunity to brief this issue, I will not award attorneys' fees to the district at this time. However, the district's sentiment is understood. In the order on the motion to dismiss, I pointed out the errors in Taggart-Erkander's amended complaint. Yet, she inexplicably filed a second amended complaint that failed to remedy those errors, and after discovery made it clear that her due process cause of action would fail, she continued to defend it. This undoubtedly unnecessarily prolonged the expense and time of this litigation.

In sum, for all the reasons stated above, no rational trier of fact could find that the RUSD violated Taggart-Erkander's right to procedural due process. The defendant's motion for summary judgment is granted and this case is dismissed.

### ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendant's motion for summary judgment (Docket # 37) is **GRANTED**. This case is dismissed. The clerk of court will enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 21st day of August, 2020.

BY THE COURT

_____
NANCY JOSEPH
United States Magistrate Judge